# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jorge Albino Rodriguez, | Case No. 19-cv-02860 (SRN/KMM) |
| Plaintiff, | |
| v. | **ORDER** |
| Michael R. Pompeo, in his official capacity as Secretary of State of the United States, | |
| Defendant. | |

Nicholas Ratkowski, Contreras & Metelska, P.A., 200 University Avenue West, Suite 200, Saint Paul, MN 55103, for Plaintiff.

David W. Fuller, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; Elizabeth Veit, Department of Justice, PO Box 868, Washington, DC 20044; and Theo Nickerson, Department of Justice, 450 Fifth Street Northwest, Room 6050, Washington, DC 20530, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion for Attorney's Fees and Costs [Doc. No. 29] filed by Plaintiff Jorge Albino Rodriguez. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **DENIES** the motion.

## I.    BACKGROUND

Rodriguez was born in Laredo, Texas on February 23, 1973. (Compl. [Doc. No. 1], at ¶ 9.) Since 2002, Rodriguez has made three attempts to obtain a United States passport from the Department of State ("the Department"). Rodriguez first submitted a passport

application in late 2001 or early 2002. (*Id.* ¶ 21.) The record does not clearly identify which documents Rodriguez submitted with that application to prove his U.S. citizenship. However, on March 1, 2002, the Department sent Rodriguez a letter stating that "Texas Birth Cards and Texas Birth Abstracts are not adequate for passport purposes," and requesting that Rodriguez "submit a certified copy of [his] complete long-form birth record." (Decl. of Theo Nickerson ("Nickerson Decl.") [Doc. No. 37-2], Ex. A.) The letter informed Rodriguez that his passport application "is denied unless you adequately address the requirements stated above for issuance of a passport." (*Id.*) It is alleged that Rodriguez filled out and returned the supplemental information form enclosed with the letter, but Rodriguez does not allege that he included the requested long-form birth record. (Compl. ¶ 21.) The Department sent a second letter requesting additional documentation, and Rodriguez did not respond. (*Id.*) The early 2002 application was then denied.

Rodriguez made a second attempt to obtain a U.S. passport in November 2002. (*See* Nickerson Decl., Ex. B.) Although the Complaint does not mention the November 2002 application, the Department asserts that Rodriguez submitted the same documentation as he had in his first application—namely, his Texas birth certificate and Minnesota Commercial Driver's License. (Mem. in Opp'n [Doc. No. 37-1], at 4.) Again, the Department sent Rodriguez a letter stating that it required additional documentation to establish his citizenship. (Nickerson Decl., Ex. C.) That letter stated that the application would be denied unless Rodriguez submitted the requested documentation within thirty days. (*Id.*) Rodriguez did not respond to the letter, and on April 18, 2003, the Department sent a second letter stating: "Since we have not received your reply to our correspondence,

your passport application is being filed without further action. . . . If you still wish to obtain a passport, you will need to reapply." (*Id.*, Ex. D.)

Rodriguez filed a third passport application in February 2015. (*Id.*, Ex. E.) In March 2015, the Department sent Rodriguez a letter stating that it needed "additional information regarding the factual circumstances" of his birth because his Texas birth certificate had been filed "by a birth attendant who is suspected of submitting false birth records." (*Id.*, Ex. F.) The Department explained that while "midwife births were and are common in some border areas of the United States, particularly along the Texas-Mexico border . . . the Department has evidence that some birth attendants fraudulently registered some births as having occurred in the United States even though they actually occurred outside the United States." (*Id.*) The letter requested that Rodriguez submit additional documents, such as a baptismal record, within ninety days, and advised Rodriguez that if he did not respond his application would be "reviewed based on the information already provided and obtained by the Department." (*Id.*) Rodriguez did not respond to the letter. (Compl. ¶ 22.) In a letter dated January 4, 2016, the Department informed Rodriguez that his application was denied. (Nickerson Decl., Ex. G.) The Department found that because the Texas birth certificate had been filed by a birth attendant suspected of fraud, and because Rodriguez had not submitted additional evidence of his U.S. citizenship, Rodriguez had failed to prove his citizenship by a preponderance of the evidence. (*Id.*)

Subsequently, Rodriguez filed this action against the Secretary of State under 8 U.S.C. § 1503(a), seeking a declaration that he is a U.S. citizen and an injunction requiring the Department to issue a U.S. passport. (Compl. ¶¶ 48-49.) The Department moved to

dismiss, arguing that § 1503(a)'s five-year statute of limitations began to run after the Department's denial of Rodriguez's first passport application in 2002. Shortly before the Department filed its motion, Rodriguez served his initial disclosures, which included a February 17, 1974 baptismal certificate listing his date and place of birth as February 23, 1973 in Laredo, Texas. (Nickerson Decl., Ex. H.) Rodriguez also disclosed a registration of birth filed in Mexico on June 13, 1985, which similarly listed his date and place of birth as February 23, 1973 in Laredo, Texas. (*Id.*, Ex. I.)

The Department represents that, after reviewing Rodriguez's initial disclosures, it determined that he had met his burden to prove his U.S. citizenship. (Mem. in Opp'n at 8.) Accordingly, the parties filed a joint motion to stay the case for sixty days while they engaged in settlement negotiations, which the Court granted. (Joint Mot. to Stay [Doc. No. 15]; Order [Doc. No. 16].) Near the expiration of that stay, the parties filed a motion to extend the stay for an additional thirty days, which the Court granted. (Second Joint Mot. to Stay [Doc. No. 18]; Order [Doc. No. 20].) On August 24, 2020, pursuant to the parties' settlement agreement, the parties filed a stipulation to dismiss Rodriguez's claims with prejudice, but preserved the issue of Rodriguez's statutory entitlement to attorney's fees and costs. (Stip. of Dismissal [Doc. No. 25].) Thereafter, the Court dismissed Rodriguez's claims with prejudice, while retaining jurisdiction to consider Rodriguez's motion for attorney's fees and costs under 28 U.S.C. § 2412. (Order [Doc. No. 27].) That motion is now before the Court.

## II.    DISCUSSION

Under the Equal Access to Justice Act ("EAJA"), "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort) . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). In opposition to Rodriguez's motion, the Department argues that Rodriguez is not a "prevailing party" under the statute, that the Department's position (both in denying Rodriguez's passport applications and in invoking the five-year statute of limitations) was substantially justified, that a fee award would be unjust, and that Rodriguez's requested attorney's fees are unreasonable.

The Court finds that Rodriguez is not a "prevailing party," and is therefore not entitled to attorney's fees or costs under the EAJA. "[T]o qualify as a 'prevailing party,' a plaintiff must obtain 'actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *John T. ex rel. Robert T. v. Iowa Dep't of Educ.*, 258 F.3d 860, 863–64 (8th Cir. 2001) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)). Such a change in the defendant's behavior "must come from the Court in the form of a judgment, or a consent decree." *Giombetti v. Wolf*, No. CV 20-873 (JRT/ECW), 2020 WL 4882992, at *1 (D. Minn. Aug. 20, 2020) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001)). "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by

the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Buckhannon*, 532 U.S.

at 605.[1] The Eighth Circuit has cited with approval the D.C. Circuit's distillation of three

core principles from *Buckhannon*:

> First, in order to be a prevailing party, a claimant must show that there has
> been a court-ordered change in the legal relationship between the plaintiff
> and the defendant.
>
> Second, a prevailing party is a party in whose favor a judgment is rendered,
> regardless of the amount of damages awarded.
>
> Third, a claimant is not a prevailing party merely by virtue of having acquired
> a judicial pronouncement unaccompanied by judicial relief.

*Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 910 (8th Cir. 2012) (quoting *Select

Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 947 (D.C. Cir. 2005) (citations to

*Buckhannon* omitted)).

In this case, Rodriguez has not obtained "actual relief on the merits of his claim

[that] materially alters the legal relationship between the parties by modifying the

defendant's behavior in a way that directly benefits the plaintiff." *John T. ex rel. Robert T.*,

258 F.3d at 863–64 (quoting *Farrar*, 506 U.S. at 111–12). The Court did not rule on the

---

[1] In *Buckhannon*, the Supreme Court rejected the "catalyst theory" in the context of a claim to attorney's fees under the Fair Housing Amendments Act and the Americans with Disabilities Act. 532 U.S. at 605. The catalyst theory "posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601. As this Court noted in *Giombetti*, although the Eighth Circuit has not specifically addressed whether *Buckhannon* applies to the EAJA, "there is no reason to think that the EAJA would be exempted from the rule." 2020 WL 4882992, at *1 (citing *Tawakal Halal LLC v. United States*, No. 17-CV-4732 (ECT/TNL), 2019 WL 6243157, at *2 (D. Minn. Nov. 22, 2019) (collecting cases)). Notably, both parties assume that *Buckhannon* applies to the EAJA, and Rodriguez therefore does not rely on the catalyst theory. (*See* Mem. in Supp. [Doc. No. 32], at 9.)

merits of the Department's Motion to Dismiss, let alone the merits of Rodriguez's claims. In an effort to establish "a court-ordered change in the legal relationship" between the parties, *Rogers Grp., Inc.*, 683 F.3d at 910, Rodriguez argues that the Court's orders staying this case for the purpose of settlement discussions equate to a remand to the Department to reconsider its denial of his passport applications. The cases Rodriguez relies on, however, involved actual court-ordered remands—not orders granting a joint request for a stay of proceedings for settlement purposes. Treating this Court's orders as a "functional remand" sufficient to obtain prevailing party status, as urged by Rodriguez, would greatly disincentivize early settlement negotiations like those that proved effective in this case. The Court declines to endorse such a proposition.

Rodriguez alternatively asserts that the Judgment entered in this case, pursuant to the parties' stipulation and settlement agreement, confers prevailing party status on him. Rodriguez likens the Judgment to a consent decree or "judicially enforceable settlement." (Mem. in Supp. at 14.) It is true that, in some sense, the Court's judgment constitutes "a court-ordered change in the legal relationship" between the parties, inasmuch as the Court dismissed Rodriguez's claims against the Department with prejudice. *Rogers Grp., Inc.*, 683 F.3d at 910. However, it is difficult to construe the dismissal of Rodriguez's Complaint, with prejudice, as a judgment in his favor. *Cf. id.* ("[A] prevailing party is a party in whose favor a judgment is rendered . . . ." (quotation omitted)). Moreover, "a claimant is not a prevailing party merely by virtue of having acquired a judicial pronouncement unaccompanied by judicial relief." *Id.* (quotation omitted). Here, the Court's Judgment does not provide Rodriguez any relief. (*See* Judgment [Doc. No. 28].)

Although the Court entered judgment following the parties' joint stipulation pursuant to their settlement agreement, neither the Court's Order dismissing the Complaint nor the Judgment refer to the settlement agreement, require the Department to issue a passport to Rodriguez, make any declaration regarding Rodriguez's citizenship, or grant any other relief to Rodriguez.

In short, during this lawsuit Rodriguez offered the Department the documentation it had requested in response to each of his three passport applications, and which he declined to submit during each application process. After reviewing that documentation, the Department agreed that Rodriguez is entitled to a U.S. passport, and the parties settled this matter. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Buckhannon*, 532 U.S. at 605. The Department's change in conduct lacks any judicial imprimatur, and Rodriguez is therefore not a "prevailing party" under the EAJA. Accordingly, the Court denies his Motion for Attorney's Fees and Costs.[2]

---

[2] The Court also finds that even if Rodriguez were a prevailing party, he would not be entitled to attorney's fees because the Department's decisions to deny his passport applications, as well as its invocation of the statute of limitations, were substantially justified. In response to each of Rodriguez's applications, the Department notified him that it believed the evidence of his birth in Laredo, Texas was insufficient, and that his application would be denied unless he submitted further evidence of his citizenship. In each instance, Rodriguez declined to submit additional documentation. The Department's denial of his applications on this basis was substantially justified. *See Bah v. Cangemi*, 548 F.3d 680, 683–84 (8th Cir. 2008) ("A substantially justified position need not be correct so long as 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" (citation omitted)); *see also* 22 C.F.R. § 51.45 ("The Department may require an applicant to provide any evidence that it deems necessary to establish that he or she is a U.S. citizen or non-citizen national, including evidence in addition to the evidence specified in 22 CFR 51.42 through 51.44."); *Sanchez v. Kerry*, 648 F. App'x 386, 387–88

## III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Attorney's Fees and Costs [Doc. No. 29] is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 31, 2021                                              s/Susan Richard Nelson
                                                                             SUSAN RICHARD NELSON
                                                                             United States District Judge

---

(5th Cir. 2015) (rejecting the plaintiff's contention that the Department of State must treat his Texas birth certificate as conclusive proof of U.S. citizenship for purposes of his passport application).

Moreover, the Department's position that § 1503(a)'s statute of limitations began to run following the final denial of Rodriguez's first application, rather than his third, was substantially justified. *See, e.g.*, *Icaza v. Shultz*, 656 F. Supp. 819, 823 (D.D.C. 1987) ("It is illogical to commence the running of the limitations period from the time of the latest in a series of passport applications. Were this done, the limitations period established by Congress in section 1503(a) would be empty of meaning.").